IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| O.A.S., | ) |
| | ) |
| Petitioner, | ) Civil Action No. 25-316J |
| | ) |
| v. | ) Magistrate Judge Maureen P. Kelly |
| | ) |
| LEONARD ODDO, *in his official capacity as* | ) Re: ECF Nos. 1 and 13 |
| *Warden of Moshannon Valley Processing* | ) |
| *Center, et. al.*, | ) |
| | ) |
| Respondents. | ) |

## **MEMORANDUM OPINION**

Petitioner O.A.S. ("Petitioner")[1] is an immigration detainee who, at the initiation of this matter, was held at the Moshannon Valley Processing Center ("MVPC") in Phillipsburg, Pennsylvania.[2] Petitioner submitted a "Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241" (the "Petition") on September 25, 2025. ECF No. 1. In the Petition, Petitioner challenges his lengthy immigration detention pursuant to 8 U.S.C. § 1231(a), and seeks release. ECF No. 1 at 2 and 36. For the reasons that follow, the Petition will be granted.[3]

Additionally, Petitioner's "Application to Order for Show Cause and Preliminary Injunction and Temporary Restraining Order," (the "TRO Motion"), ECF No. 13, which was filed after this case was joined by Respondents, ECF No. 7, will be denied as moot.

---

[1] Petitioner was granted leave to proceed under a pseudonym. ECF No. 5.

[2] On or about November 17, 2025, Petitioner was transferred to Miami Correctional Facility in Bunker Hill, Indiana. ECF Nos. 30 at 5; 30-1 at 5, 31, and 32. This was done without notice to this Court, and without its approval. Be that as it may, the transfer was effected well after the filing of this case, and does not divest this Court of jurisdiction. See Anariba v. Dir. Hudson Cnty. Corr. Ctr., 17 F.4th 434, 448 (3d Cir. 2021).

[3] The Parties consented to the jurisdiction of a United States Magistrate Judge on October 20, 2025. ECF Nos. 8 and 10.

1

I.    **RELEVANT BACKGROUND AND FACTS**

In the Petition, Petitioner alleges that he is a citizen of Jamaica. ECF No. 1 at 1. He alleges that he has been detained by immigration officials since August 14, 2024. Id. at 17.

Petitioner entered the United States on a B-2 visa in 2021, and overstayed its duration. ECF No. 23 at 1; ECF No. 23-2 at 2. The record indicates that Petitioner was found to be removable to Jamaica pursuant to INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), by an Immigration Judge ("IJ") in January of 2025.[4] ECF No. 23-5 at 4 and 6. On the same date, Petitioner was denied asylum, but was granted withholding of removal to Jamaica pursuant to INA § 241(b)(3), 8 U.S.C. § 1231(b)(3). Id. at 4. Accordingly, Petitioner may not be removed to Jamaica. 8 U.S.C. § 1231(b)(3)(A). The record does not indicate that Petitioner has been ordered removed to a third country, or that a third country has agreed to take Petitioner.

The Department of Homeland Security ("DHS") did not appeal the IJ's grant of withholding of removal; however, Petitioner timely appealed to the Board of Immigration Appeals ("BIA") from the order denying asylum. ECF No. 23-7 at 3. Petitioner moved to withdraw that appeal on April 4, 2025, id. at 4, which the BIA granted on April 14, 2025. ECF No. 23-8 at 4. Thus, while the parties disagree as to the date on which Petitioner's order of removal became final, compare ECF No. 1 at 19 and ECF No. 23 at 2, it is beyond dispute that Petitioner has been subject to a final order of removal since April 14, 2025, at the latest. This is almost eight months as of the date of this writing.

---

[4] Rather than citing to the United States Code, and for reasons that are unclear, immigration officials tend to cite directly to sections of the Immigration and Nationality Act ("INA"). These citations often do not match up to the United States Code in any discernable fashion. In order to avoid unnecessary confusion, this Court will provide parallel citations to the United States Code and the INA where necessary.

The Petition was filed on September 25, 2025 ECF No. 1. Respondents answered on November 10, 2025. ECF No. 26. Petitioner's Traverse was filed on December 8, 2025. ECF No. 33.

The Petition is ripe for consideration.

## II.   DISCUSSION

28 U.S.C. § 2241 allows a court to grant a writ of habeas corpus to a prisoner held "in violation of the Constitution or laws or treaties of the United States[.]" Id. at § 2241(c)(3). This Court has jurisdiction to hear the merits of the instant case under that statute. Zadvydas v. Davis, 533 U.S. 678, 688 (2001) (" We conclude that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention."). See also Roe v. Oddo, No. 25-cv-128J, 2025 WL 1892445, at *4 (W.D. Pa. July 9, 2025) (holding that 8 U.S.C. § 1252(g) did not strip the court of jurisdiction since it was "examining the contest of Petitioner's detention" and not "reviewing Petitioner's removal order.").

8 U.S.C. § 1231(a) states, in pertinent part:

> [(1)(A)] Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the "removal period").

> \*\*\*

> [(2)(A)] During the removal period, the Attorney General shall detain the alien. Under no circumstance during the removal period shall the Attorney General release an alien who has been found inadmissible under section 1182(a)(2) or 1182(a)(3)(B) of this title or deportable under section 1227(a)(2) or 1227(a)(4)(B) of this title.

> \*\*\*

> [(6)] An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to

3

comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

Once the 90-day removal period of Section 1231(a) has passed, and after "removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute[,]" and the alien must be released. Zadvydas, 533 U.S. at 699. "Indefinite, perhaps permanent, detention" is not authorized. Id. To the contrary, the Court found that interpreting the statute to allow for indefinite detention would raise "a serious constitutional threat[.]" Id.

Thus, in Zadvydas, the Supreme Court interpreted § 1231(a)(6) to limit post-removal order detention to a period "reasonably necessary to bring about that alien's removal from the United States." 533 U.S. at 689. The Court found that a post-removal order detention period of six months was "presumptively reasonable[;]" however, beyond those six months, if removal no longer is reasonably foreseeable, continued detention becomes unauthorized. Id. at 701.

"After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id. Thus, an alien is not necessarily entitled to release at the conclusion of six months of post-removal order detention. Instead, DHS may continue detention until no significant likelihood of removal in the reasonably foreseeable future exists. Id. But "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." Id.

Here, Petitioner has been held for nearly eight months of post-removal order detention. He has been granted withholding of removal to his country of origin, precluding his removal there.[5]

---

[5] Respondents attempt to undercut Petitioner's argument by citing to Chen v. Banieke, No. 15-cv-2188, 2015 WL 4919889, at *4 (D. Minn. Aug. 11, 2015), and Joseph v. United States, 127 F. App'x 79, 81-82 (3d Cir. 2005). But neither of those cases involved a petitioner who had been (continued . . .)

8 U.S.C. § 1231(b)(3)(A). Petitioner further has submitted evidence in the form of his own declaration and the declaration of his immigration attorney that, through the course of multiple communications with DHS officials, none of them has indicated that a third country has expressed a willingness to accept Petitioner, or has begun the process of preparing travel documents. ECF No. 13-2 at 1-4; ECF No. 30-1 at 4-5. This is sufficient, in this Court's view, to meet Petitioner's initial burden under Zadvydas.

Respondents do not submit much in the way of rebuttal. Their best argument that removal might be likely in the reasonably foreseeable future is that "ICE has submitted requests to several countries and the one sent to Canada remains outstanding." ECF No. 26 at 7 (citing to Exhibit 12

---

granted withholding of removal to his country of origin. Instead, in Chen, the District of Minnesota found that the petitioner had not met his initial burden under Zadvydas because:

> The record indicates that ICE has undertaken reasonable efforts to secure Chen's removal, including requesting a travel document from the Chinese government within a month of his ordered removal and, when that document did not issue within the anticipated timeframe, meeting with Chinese delegates to resolve repatriation issues, signing an updated repatriation memorandum of understanding, resubmitting its request for travel documents in accordance with China's demands, and pleading for a "prompt response" to that renewed request so Chen could "be scheduled to depart the United States." (See Doc. No. 12, Attach. 1 at 50, 54, 60; Hartfield Decl. ¶¶ 5–6.) The record further indicates that China ordinarily issues travel documents to aliens like Chen whose Chinese nationality has been verified.

Chen, 2015 WL 4919889, at *5.

In Joseph, immigration officials had been in communication with the petitioner's country of origin, which "has provided travel documents in the past[,]" and had "expressed a willingness to issue" travel documents in that case. Joseph, 127 F. App'x at 81.

Here, Petitioner cannot be removed to his country or origin, and there is no indication that any other county has expressed a willingness to accept him. Accordingly, Chen and Joseph are easily and obviously distinguishable from the facts of the instant case.

5

thereto).⁶ Nothing in the record – or in Respondents' argument – indicates that Canada ever has expressed a willingness to issue travel documents or accept Petitioner.⁷

Respondents' have not adduced sufficient evidence to "rebut [Petitioner's] showing." Zadvydas, 533 U.S. at 701. "A remote possibility of an eventual removal is not analogous to a significant likelihood that removal will occur in the reasonably foreseeable future." Escalante v Noem, No. 25-cv-182, 2025 WL 2206113, at *4 (quoting Kane v. Mukasey, No. 08-cv-037, 2008 WL 11393137, at *5 (S.D. Tex. Aug. 21, 2008), superseded by 2008 WL 11393094 (S.D. Tex. Sept. 12, 2008) (a new report and recommendation was entered denying the petition as moot because petitioner was deported prior to the order adopting the report), adopted by 2008 WL 11393148 (S.D. Tex. Oct. 7, 2008)).

This Court therefore finds that, under Zadvydas, Petitioner has provided "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," and Respondents have not "respond[ed] with evidence sufficient to rebut that showing." Zadvydas, 533 U.S. at 701. Petitioner's continued detention is not authorized by Section 1231. The writ will

---

⁶ There is no Exhibit 12 to Respondents' Answer. However, at Exhibit 11, Respondents attach a letter entitled "Decision to Continue Detention," dated May 29, 2025, which states: "ICE is in receipt of or expects to receive the necessary travel documents to effectuate your removal, and removal is practicable, likely to occur in the reasonably foreseeable future, and in the public interest." ECF No. 26-12 at 1-3. There is little to nothing in this letter to indicate that it is at all tailored to Petitioner specifically, or is anything other than boilerplate.

⁷ This Court is mindful that Petitioner was denied bond by an IJ based on findings that he was a danger and a flight risk. ECF No. 26 at 1-2. See also ECF No. 26-6 at 2. But see ECF No. 26-4 at 2-3 (finding that Petitioner had submitted evidence "that would reduce the Court's calculation of his risk of flight[,]" but maintaining a prior determination of Petitioner's danger to the community). But the Supreme Court cautioned in Zadvydas that "we have upheld preventive detention based on dangerousness only when limited to specially dangerous individuals and subject to strong procedural protections. [. . . .] In cases in which preventive detention is of potentially indefinite duration, we have also demanded that the dangerousness rationale be accompanied by some other special circumstance, such as mental illness, that helps to create the danger." 533 U.S. at 690-91. The record in this case does not support such a finding.

6

be granted directing Petitioner's release from custody, subject to appropriate conditions in accordance with 8 U.S.C. § 1231(a)(3).

Because the writ will be granted, Petitioner's TRO Motion, ECF No. 13, will be denied as moot. Because it is moot, the undersigned need not opine on its merits.

An appropriate order will follow.

### III. CONCLUSION

For the reasons set forth herein, the Petition, ECF No. 1, will be granted, and the TRO Motion, ECF No. 13. will be denied as moot..

A certificate of appealability is not required for federal detainees seeking relief under Section 2241. Muza v. Werlinger, 415 F. App'x 355, 357 n.1 (3d Cir. 2011). See also 28 U.S.C. § 2253(c)(1). Therefore, it is not necessary to determine whether one should be issued here.

An appropriate Order follows.

Dated: December 10, 2025

BY THE COURT,

MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

cc:   Counsel of record (*via* CM/ECF)